May it please the court. Cheryl McLeod on behalf of Devaughn Dorsey. I want you to begin with the government's testimony placing the gun that was used during the May 13th shootings seemingly in Mr. Dorsey's hands before the shooting. And I want to begin with that because admitting testimony that Mr. Dorsey previously possessed but didn't use some kind of gun with varying descriptions at some unknown time, perhaps four to nine months before the May 13th shooting, violated Rule 404B, Rule 403 and the Due Process Clause. Now certainly if it had been a May 13th sighting of him with the gun, it would have been admissible as part of the crime itself. The district court admitted it as it was presented as either inextricably intertwined evidence or Rule 404B evidence and the district court rejected the 404B theory and admitted it as inextricably intertwined. So let me start with that. To be inextricably intertwined under the similar time, same transaction prong, the evidence has to be from a similar time and it has to be what this court has called from a quote single criminal transaction. Now the government promised that that's what they would have. At one point before trial they argued to the district court judge that the evidence would show that the gun was seen two weeks before the charged shootings. But that's not what they delivered. What they delivered was testimony from Mr. Fomby and Ms. Harper. Mr. Fomby began by testifying that he didn't know when he saw Mr. Dorsey previously with a gun. When pressed he said it was quote sometime in 2008. When pressed further he linked it with crimes with the Dodge Chargers and the Buick La Crosses. I went back through the exhibits and I tracked for the court that those crimes occurred from as far back as August of 07 to January of 08. The government argued in its response no, no, we didn't mean all of those thefts. We meant the specific charger, lacrosse dealings where they were erasing the vins in mid-March. And I reread the testimony they cited with that in mind and that was certainly what I guess trial counsel was trying to do. But if you reread that, that's not what they elicited. What they elicited was sometime in 2008, sometime connected with some crimes involving the charger and the lacrosse. And then they elicited from Ms. Harper that she saw the gun and she was part of this Fomby-Dorsey incident during the time she was going out with Dorsey. Well, the testimony was unrebutted that that was between Thanksgiving of 2007 and February of 2008. So this is a good jury argument that really doesn't have anything to do with this and you shouldn't hold it against him. But whether or not it should be admitted in all these circumstances, Judge Lasnik was there. Isn't it a judgment call? It's a judgment call, but it's guided by this court's decision in Vizcarra v. Martinez. And that court said to be admissible under this prong of the inextricably intertwined, it's got to be a similar time. It wasn't a similar time. Let me interject a related question on this. Your position, I think, on this issue has got to be that he abused his discretion in the evidentiary ruling because it's contrary to law. Is that what you're saying? Actually, I think that this is subject to de novo review. Well, certainly there was a pre-trial motion brought up, so it was brought to the district court's attention. Whether certain evidence fits within the definition of Rule 404B or fits within the definition of inextricably intertwined is a legal question. That's what I just said. I said he abused his discretion because it's an error of law. I guess we get to the same point. That's your theory. But the question I have is, I guess, why do we even have to be looking at the inextricably intertwined theory? If a guy owns a gun that's like a Glock, that's like a Glock at some point, and a witness who's for a grand jury is shot by a gun that's identified as a gun like a Glock, why isn't that just relevant evidence? And the arguments that you make would go to wait. Well, the reason is because the admissible evidence would be evidence that he owned a Glock around the time of the shootings, not at some time before, not before the plan to do the shootings or to get rid of a witness developed. That's totally irrelevant. How long before the shooting did the evidence indicate he had the Glock? It was either four to nine months, if you go by my dates of the lacrosse and charger incidents, or three to five months, I believe, in the government's most recent response. Let's say it's four to nine months or even a year. But if someone has a weapon that's of the type that inflicted the injury to the witness at some point even a year before, why wouldn't it just go to wait the length of time? Well, I think it goes to the prerequisites to admissibility for this reason. The things that you're talking about, including the reliability of the identification, are part of what the judge considers under 404B and under the inextricably intertwined test. It's not just a jury question. Under Bebo Rodriguez, this court specifically stated that the reliability of the identification is one of the things that the court has to consider under 104 in its preliminary determination about whether it's admitted. So, thank you for saying it's a good jury argument, but it's also a good argument going to admissibility before the district court judge under this court's test. If this court were to say that reliability can only be considered by the jury, it would be going against the Bebo Rodriguez test on 404B. What I was trying to do was to get some of your argument as to why we have to look at the inextricably intertwined test. Why isn't it just in the ballpark of the normal standard for what's relevant evidence? I think the short answer is because it was so long before, because the type of use was so different, it was mere possession as opposed to shooting people. And so, to me, it reminds me of the case of U.S. v. Hill. I think that's this court's case from 1991, where the prior was simple possession of marijuana and the current defense was a distribution and conspiracy of drugs. And this court reversed, holding, yeah, it's both drugs, but it was so much earlier and it was a crime that was so different in nature, mere possession versus actively doing something bad, that it was not admissible. Well, look, I understand your argument on that. You've got a lot of issues that you want to get through, so go ahead. Let me make, I appreciate what you're telling me. Let me make one other point about this on the reliability. I do want to call this court's attention to that photo montage, and we did have it copied in color at E.R. 378. And when we're talking about the reliability of the identification, this is a three-gun montage or show-up. If it was people, I think we'd all agree that a three-person show-up where two people look exactly alike and the third one is different would be incredibly suggestive. And that was why I cited the recent U.S. Supreme Court case of Perry listing the indicia of suggestiveness. This is a woman, a witness, who said she had no familiarity with guns, who was interviewed about what she saw many months later after the gun, who said it was hard for her to identify it, and it was presented with two glocks and a cowboy-style ivory-handled revolver. But didn't she actually describe what she thought it looked like before she saw the picture? Not as what she thought. She described it, according to her testimony, as a police type of gun, something like the police carry. Charcoal? She said charcoal. Fomby said black. Fomby said it had an extended clip. The stuff in the montage, none of it had an extended clip coming down. It was just a regular block with nine or 12 cartridges. So if it had been a photo montage of an individual, I think we all would have agreed that it was unduly suggestive. And again, it's pretrial determination on admissibility, not solely for the jury. Was it she that said it was big and bulky and cop-like, or was that the other gentleman, or was it both? I think both said bulky. I believe that Harper was the one who said gray and cop-like. I believe that Fomby was the one who said extended clip and black. So the descriptions differed from each other as well. But I hear you, Judge Gould. And I'd like to move on to the Section 924C issue concerning sentencing. You're not going to say anything about the police officer who said he did it? The vouching. There are a couple of interesting vouchings. Ms. McLeod, just to set your mind at ease, we'll give you an extra couple of minutes to argue on this or your rebuttal so that you can cover all the issues. I appreciate that. Well, I will get to the vouching issue. The principal vouching issue is Mr. Fomby's testimony that the government would, quote, not tolerate any deception from him. The government defended against the vouching argument by saying that it's fair response to elicit the truth-telling provisions of a plea agreement in response to a tax and opening statement. Certainly the defense made a tax and opening statement. Certainly the government elicited the truth-telling provisions. But what they forgot to talk about is they also elicited this thing from Fomby where the government asked, quote, isn't it true, sir, that the United States will not tolerate any deception from you, close quotes. Answer, correct. So that's not the witness supplying anything. That's the government eliciting the answer. Was that objected to? It was not objected to. It was not objected to at the time. It fits the plain error standard. Under Brooks, this court's decision from 2007, that is testimony that the government is monitoring the testimony, not just truth-telling provisions. It's clearly impermissible. Now, the rest of the plain error calculus, substantial rights, fairness, seriously affects the integrity of the proceedings. I think for that you have to look at the importance of Fomby as a witness and the other evidence in the case. Mr. Fomby's testimony was critical. It was a circumstantial evidence case. And I want to remind you that the district court said that in the excerpts of record at 193 to 94. When he's denying the Rule 29 motion, he said, I think that this is a close case for the jury. It's a circumstantial evidence case, but it does get to go to the jury. So it was close. It was circumstantial. Mr. Fomby gave them motive, which they had from other sources. Mr. Fomby gave them that there was a threat, and they had a different threat from another source. Mr. Fomby gave them the gun in Mr. Dorsey's hands. And the only other place that they had the gun in Mr. Dorsey's hands was the prior girlfriend, Maura Harper, who had three times contradicted herself, and finally on the eve of trial said, I saw something and then saw the three-gun photo montage. Mr. Fomby's testimony was critical on the gun, and they didn't have any other credible evidence on that. The vouching was not an isolated incident. As you said, we have Detective Seguro's testimony that he did it, but that was objected to, and there was an immediate... It's an odd question he was asked. I've never seen an exchange quite like this. He was asked, well, it would be likely that he would have known about the crime, and the police officer says, well, of course he did it. He did it, right. And the district court jumped right in, which is why I didn't argue that one first. But, you know, the government continued questioning Detective Seguro, and Detective Seguro's testimony in the following pages around ER 250 continue in the same vein. He kept saying, oh, well, the evidence kept pointing to the defendant's guilt. Then we have Detective Daley's testimony. He testified that Mr. Fomby was consistent, and I believe there were objections to that. He wasn't just saying Mr. Fomby said this and then said that. He said, yes, I view that as consistent testimony, which is another form of vouching. Ms. McLeod, your initial time's almost up. I'm going to give you an extra three minutes and hope Ms. Otake doesn't get angry at that. But I just want to know if you want to reserve the time. Is there anything else you haven't covered that you want to at least mention before the government argues? Yes, I want to mention that on the Section 924C issue, I understand that every court that has discussed this has taken the opposite position that I am advancing. But the Dare Ninth Circuit decision and the Harris Supreme Court decision clearly did so in dicta. And that dicta is contrary to the rule of lenity. It is contrary to the plain language rule, and it just doesn't make sense. It does not give fair notice to defendants. Okay, well, let me ask you a question about this. It's about like what's the maximum sentence for 924. So your position, is your position that the maximum is the same as the specified minimum? Or is it not that, but just that we don't know what the maximum is because of congressional silence? I think what I have to say is that given Abbott, which says that it's a unitary set of penalties, that the maximum is 10 years, which is the highest penalty that they include in 924C.  Thank you, Your Honor. Thank you. We'll let you make two minutes of rebuttal argument. Thank you. And we'll hope Ms. Otake will not mind. She can have an extra minute or two if she needs it. Thank you, Your Honor. May it please the Court, good morning. My name is Jill Otake, and I represent the United States in this matter. With regard to the evidentiary issues on appeal, if Your Honor stepped back for a moment and looked at the big picture of the case, the evidence that is in dispute is really collateral to the case. When you look at the most vital evidence in this case, it was the cell tower information proving that Mr. Dorsey was at the scene of the crime. It was the fact that moments after the shooting, Mr. Dorsey calls the Seattle police in order to create a false alibi, lying to them about where he is. He's miles and miles away from where he says he is. And the only reason why he'd have to create a false alibi is because he was the shooter. And finally, Your Honor, that Mr. Dorsey had a motive to commit the crime. So with this in mind, let's talk for a few moments about the firearm. And I think, Your Honor, Judge Gould is absolutely correct that it was relevant evidence, that it was evidence that showed that he had the instrumentality of the crime. That's what we argued to the jury. And I'd like to also clarify a few factual matters that were raised in the appellant's argument. The reality is that Mr. Dorsey himself told the police on March 12th, I'm arming myself, I've armed myself. So there was already evidence that corroborated the fact that he had a gun, other than Louie Harper's testimony. Additionally, Mr. Fonby himself ties witnessing the Glock to a specific event that took place on March 14th. So it's the government's position that Mr. Fonby saw the Glock on March 14th, and Ms. Harper saw it sometime when she was dating him between the end of November and February. Ultimately, Your Honor, the evidence was relevant, and for that reason the court did not abuse its discretion when admitting it. With regard to the vouching matter, again, if you look at the big picture, I understand counsel's argument that Mr. Fonby was a vital witness. But in the grand scheme of things, absolutely everything he testified to at trial was corroborated by other witnesses, and in addition amounted to collateral evidence. Mr. Fonby did not testify at all about the cell towers. He did not testify at all about the false alibi or the calls. He did testify, of course, to the motive that the defendant had, but as counsel concedes, there were other people who testified to this. Everything he said was corroborated by other witnesses. He testified to the background on the VIN switching scheme, which Detective Daly talked about extensively in his testimony. He indeed testified about the gun, but as I already argued, Mr. Dorsey himself called the police and said, I'm arming myself again. And he testified about the defendant's awareness that the witnesses had been served with grand jury subpoenas and that he wanted to silence him. Now the defendant himself told a detective that he was aware that Martine Fullard, the victim in this case, had been served with a grand jury subpoena. He also, his testimony regarding the defendant's wish to silence Ms. Fullard was corroborated by Sean Turner, another witness in this case. So ultimately, you really don't even need to reach the question of whether or not what happened on the direct examination of Mr. Fomby was vouching because it cannot possibly rise to the level of plain error. Additionally, Your Honor, with regard to Detective Seguro's comments, we agree that the statements that Detective Seguro made were bad, but the court very quickly struck those statements, very quickly admonished Detective Seguro, and as was clear from the argument regarding the new trial, Detective Lasnik's tone during that admonishment was very harsh. And ultimately, Detective Seguro's statement played into the defense theory of the case. The defense theory in this case was that from the outset, the police believed Mr. Dorsey was the person who committed this crime. And for that reason, they only followed the leads that pointed to Mr. Dorsey. And in fact, if you read defense counsel's closing argument, he does remark on the fact that Detective Seguro obviously thought that Dorsey was the one who did it. And so ultimately, it wasn't really news to anyone in the courtroom. And for that reason, Your Honor, the statement itself cannot possibly have altered in any way the verdict in this case. Finally, Your Honor, with regard to the maximum penalty here, there is no compelling reason to decide this differently from any of the other circuits. And while I agree that the case law that is relied upon in the other circuits is a dissent from the United States Supreme Court, it's persuasive, it's interpreting the majority opinion in the Harris case. And I think not only does the Harris opinion and the opinions of the other circuits, not only are those opinions persuasive, but additionally, Your Honors, it's just common sense. It doesn't make sense that the mandatory minimum would be the maximum penalty. And there is a bit of illogic to that, I agree. But also, it's somewhat strange to have a statute where Congress has left a big hole, right? Are there other instances where Congress has statutes where they state a minimum but no maximum? I believe that there are, Your Honor. I don't know them, unfortunately, off the top of my head. But I believe that there are, and I think that they can also be found in Section 924C, other subsections of 924C. Okay. And if Your Honors do not have any additional questions for me, I... Just on the 924C maximum penalty issue, is it correct that we do not have any Ninth Circuit precedent that specifies that? On that particular issue, yes, with regard to the actual 924C statute, yes. Okay. Okay. Thank you. Thank you, Your Honors. And in light, Your Honors, of the reality of this case, and if you take, as I stated, a step back and look at the big picture, all of the evidence that is at issue really was either corroborated or not as vital to the conviction as counsel would have you believe. And for these reasons, we ask that you can affirm both the judgment and the sentence. Thank you. Okay. I thank Ms. Otake and Ms. McLeod. I hear your rebuttal argument. Thank you, Your Honor. On whether the gun was collateral to the case because the other evidence was so strong, if we're going to credit the district court, let's credit the district court. The district court said, this is at ER 193 to 94, quote, I think it's a very close case for the jury. So if he had a good grasp of the overall nature of the case, let's credit that too. Let's look at how the government tried the case. In opening statement, they began, quote, in the weeks prior to the shooting, they, Fomby and Harper, saw the defendant in possession of a Glock. In closing, they argued he armed himself. They argued Fomby and Harper's testimony about the gun corroborated each other. And then in rebuttal closing, they credited that testimony about the gun as well. So the district court's comments and the way the government tried the case shows that the gun was not collateral at all and that it was a circumstantial case. Yes, Mr. Dorsey did say that he was armed. He told the detective that he was armed. He said, I'm gangbanging again and I'm armed. The government, though, argued pretrial that the Fomby and Harper evidence about the gun was admissible only because it occurred so close in time and it was the same gun. The Dorsey statement wasn't so close in time and didn't say anything about being the same gun. So even on the government's theory, it wouldn't have been admissible. Mr. Dorsey was aware that Ms. Fullard had been served with a subpoena. Well, correct, but she was served May 7th and the shooting occurred May 13th. So that's irrelevant to anything that he might have known at any time of the gun sighting. And as to your question about whether there's any other statutes where there's no statutory maximum stated, I looked and looked and I didn't find any. There might be some out there, but I couldn't find any. So should we give a lecture to Congress? Well, under the rule of lenity, you've got to limit the sentence to the only plausible one that Congress might have had. Abbott said that five, seven, and ten years were part of a unitary penalty scheme. I understand that, but if Congress uses the word minimum, don't they have the word minimum in the statute? Yes, they have the word minimum in the statute and they don't have a maximum. I mean, maybe it's 20, maybe it's 25. How can you have a floor with nothing above it? Precisely, but what would be above it? Ten years is the top one that's listed in that section, so that would make sense. I mean, life certainly covers everything but not Congress's language, and that's pretty important. There doesn't seem to be a solution here that is precisely in accord with Congress's language. Because your solution is that we should interpret minimum to mean maximum, which is definitely not in accord with their language. And the government's solution is we should interpret silence to mean life, which is also not literally in the language of the statute. And when this Court is faced with such ambiguity and reasonable arguments on both sides, this Court is obligated to go with the rule of lenity. Well, yeah, except your client didn't get why. Okay. He got 18 years, which is above ten years. Okay. Well, thank you, Ms. McLeod. Thank you. We appreciate the argument. It's excellently argued by both sides. We thank Ms. Otake and we thank Ms. McLeod. The Dorsey case shall be submitted.
judges: Beistline, Schroeder, Gould